### BINION et al. v. MATHIS et al.
### No. 5549.

Court of Civil Appeals of Texas. Amarillo.

April 26, 1943.

Rehearing Denied May 31, 1943.

Murphy & Leslie, of San Angelo, for appellants.

B. W. Smith, of San Angelo, for appellees.

STOKES, Justice.

This is an appeal from a habeas corpus proceeding instituted by the appellees, Juanita Mathis and her husband, W. W. Mathis, against the appellants, William Binion and his father, W. A. Binion. By their application for the writ appellees sought in behalf of Juanita Mathis to regain the custody of her minor son, three years of age, designated in the record as William Wesley Lowe. The case was submitted to the court without the intervention of a jury and at the conclusion of the trial judgment was rendered in favor of appellees, awarding them the custody of the child and taxing the costs against appellants. Appellants duly excepted to the judgment and perfected an appeal to the Court of Civil Appeals of the Third District at Austin, and by an order entered by the Supreme Court equalizing the dockets of the Courts of Civil Appeals, the case

was transferred to this Court and is now before us for review.

The case is presented here upon a single assignment of error to the effect that the trial court erred in placing the custody of the child with its mother, Juanita Mathis and thus removing it from the custody of appellants, because the best interests of the child required its custody to remain with appellants.

The record shows that the child, William Wesley Lowe, was born out of wedlock on October 3, 1939, to Juanita Mathis then Juanita Binion, at the home of appellant, William Binion, on a farm about seven miles from San Angelo, where his father and mother, W. A. Binion and wife, together with Juanita, also resided. At that time Juanita was only about seventeen years of age and, as far as the record shows, she was possessed of no property or any means of earning a livelihood. She worked in the fields of her brother part of the time and had no other home or place of abode. When the child was about fifteen months old, Juanita married her present husband, W. W. Mathis who, it seems, was a mechanic by trade and lived in San Angelo. The record indicates that during the time intervening between the birth of the child and Juanita's marriage, the child lived alternately at the home of appellant, William Binion, and their sister, Mrs. Butler, who lived in San Angelo. During some of the time the mother would be at the place where the child was, and at other times she would be at one of those homes and the child at the other. Appellant, William Binion, and his wife and also W. A. Binion, the child's grandfather, formed a great affection for the child and it seems that regardless of where the child was residing during these intervals they considered it as a constituent member of their families. The record further indicates that after the marriage of appellees, this shifting of the child's residence and place of abode between their home and that of appellants continued for several months, but that the child's mother always considered it as being in her custody. Finally, in August, 1942, appellees sought to take the child permanently into their custody and home but appellants declined to permit them to do so, which action on their part precipitated the institution of this suit.

The testimony shows that appellant, William Binion, owns a good farm and home;

that he and his wife have no children and are very fond of the child; and that they are in comfortable circumstances and able, willing, even anxious to give the child a good and permanent home. They both testified that they would rear the child in the proper manner and give it the educational advantages to which it is entitled. On the other hand, the record reveals that, although appellees had some domestic trouble a few months after their marriage, Mrs. Mathis having filed a suit for divorce and made serious charges against her husband, the matter was settled and they have since been living together; that they have a home in San Angelo and, while it is not as commodious as that of appellants, it is of ample size and construction to house their family which now consists of themselves and a baby girl born to them eight months before the trial.

Appellants assert the correct proposition of law, that in cases of this kind the best interests of the child constitute the paramount consideration and, as indicated by their assignment of error, it is upon this proposition that they contend the court erred in taking from them the custody of the child involved in this proceeding. It is no doubt true that appellants are at this time able to furnish the child with a more commodious home and surroundings than could be furnished by appellees. This does not necessarily mean, however, that it would be for the best interests of the child to commit its care and custody to them as against the claim of its parent. The presumption of law is that the best interests of the child are subserved by placing it in the custody of its parents, who are responsible for its being, and in order to overcome the presumption it must be shown that they are not worthy of its custody and are not fit persons to bear the responsibilities involved in its rearing. Legate v. Legate, 87 Tex. 248, 28 S.W. 281; State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901; Bemus v. Bemus, 63 Tex.Civ.App. 148, 133 S.W. 503; Watts v. Lively, Tex.Civ.App., 60 S.W. 676; In re Crocheron's Estate, 16 Idaho 441, 101 P. 741, 33 L.R.A.,N.S., 868; Adair v. Clure, 218 Iowa 482, 255 N.W. 658.

Mrs. William Binion testified that about an hour after the child was born, its mother, Juanita, made an exceedingly derogatory remark about it and then gave it to her and her husband to keep as their

514

own. Mrs. Mathis denied this and stated that shortly before the birth of the child, she thought she probably would die and that she told her brother and his wife that if she should not live, she wanted them to take care of the child. In support of the judgment, we must assume that the trial court accepted the statement of Mrs. Mathis in regard to this matter and found against appellants. It being a disputed issue, we are, of course, bound by the implied finding of the trial court.

There is no testimony of any probative force in the record which indicates that appellees are not proper persons to have the care and custody of the infant son of Mrs. Mathis. Some of the witnesses testified that Mrs. Mathis' husband was addicted to strong drink and that he had stated on one occasion that if he could procure the custody of William Wesley Lowe, he would then have a dependent and would be exempt from military service. He denied both of these assertions, however, and the testimony indicates that if he was addicted to the use of intoxicating liquors at one time, he has reformed and is now a reasonably sober and industrious citizen. Moreover, the remarks attributed to him concerning the custody of the child being an excuse for his claiming military exemption, if made at all, were made early in 1941, before this country became involved in the present war, and the record shows that he and his wife now have another child, born February 18, 1942, which would furnish the same excuse if he desired to take advantage of it and dispense with the necessity of procuring for that purpose the custody of the child here involved. Notwithstanding this, and although he is not its natural father, he joins his wife in the expression of a fervent desire for the custody of the child. He offers to adopt it and give it all of the advantages that he would or could give if it were his own child. He is permanently employed at a fairly good salary and is able to give the child a reasonably good home. We think, even if such remarks were made by him, they constituted little or no evidence of his attitude at the time of the trial. Moreover, he testified that he was perfectly willing to enter the military service if the Selective Service Board should call him. By every rule of society and of nature, the parents are the proper persons to have the custody and care of their children, and the courts will not deprive them of that privilege and

responsibility in the absence of definite proof of their unfitness. The rule applies to mothers of illegitimate children the same as to the parents of those who are born under normal circumstances and conditions. Blue v. Holman, Tex.Civ.App., 245 S.W. 722.

All of the witnesses were before the trial court, and the trial judge was in a much better position to appraise the force of their testimony than an appellate court could be with only the record before it. Blue v. Holman, supra. The judgment is amply supported by the testimony and, in our opinion, there is no merit in the contentions presented by appellants. The judgment will therefore be affirmed.